United States District Court
Southern District of Texas
**ENTERED**
August 25, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JUDITH CABRERA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:20-CV-227 |
| | § | |
| COMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Judith Cabrera brought this action on September 9, 2020, seeking review of the Commissioner's final decision determining she was not disabled. (D.E. 1; Case No. 2:20-mc-875). On June 10, 2021, Plaintiff filed a Motion for Summary Judgment with a Memorandum in Support of Claim. (D.E. 19 and D.E. 20). On July 9, 2021, Defendant filed a Response construed as a Cross Motion for Summary Judgment. (D.E. 21). For the reasons below, the undersigned finds the ALJ's decision is supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED**, the Defendant's Motion for Summary Judgment is **GRANTED**, the Commissioner's determination is **AFFIRMED**, and this case is **DISMISSED with prejudice**.

## I. JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g). United States District Judge David Morales transferred this case to the

undersigned after all parties waived their right to proceed before a district judge and consented to have the undersigned conduct all further proceedings.  28 U.S.C. § 636(c); (D.E. 6 and D.E. 15).

## II.    ISSUES PRESENTED

Plaintiff contends the ALJ failed to properly evaluate the opinions of Dr. Mario Martinez, Plaintiff's treating physician, and Dr. Christopher Klaas, a consultative psychological examiner.  Plaintiff also asserts the ALJ did not accurately account for her mental limitations when determining her Residual Functional Capacity ("RFC").

## III.   BACKGROUND

Plaintiff filed an application for disability insurance benefits on June 26, 2018, alleging disability as of May 1, 2017, due to arthritis, high blood pressure, type 2 diabetes, pancreatitis, head injury, memory loss and a fractured spine.  (D.E. 11-3, Page 17; D.E. 11-8, Pages 2-5 and D.E. 11-9, Page 6).  Plaintiff's applications were denied upon initial consideration on January 11, 2019 and again denied upon reconsideration on May 10, 2019.  (D.E. 11-5, Pages 4-8 and 10-12).  At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on December 19, 2019 at which Plaintiff and a vocational expert ("VE") testified.  (D.E. 11-3, Pages 32-73 and D.E. 11-5, Pages 14-15).  The ALJ, Mark Swayze, issued an unfavorable decision on February 4, 2020, finding Plaintiff not disabled.  (D.E. 11-3, Pages 11-27).

The Appeals Council declined Plaintiff's request for review on July 8, 2020, making the ALJ's February 4, 2020 decision final.  (D.E. 11-3, Pages 2-5 and D.E. 11-7,

Pages 15-17).  Plaintiff then filed this action on September 9, 2020, seeking review of the Commissioner's final decision.  (Case No. 2:20-mc-227, D.E. 1).

## IV.    SUMMARY OF THE EVIDENCE

The undersigned has reviewed the entire record as well as the parties' medical summaries in their respective motions and has summarized the record below.

Plaintiff, at the time of the December 19, 2019 hearing, was a 55-year-old woman with a GED who completed a three-year formal vocational training program as a medical assistant.  (D.E. 11-3, Pages 45 and 47; D.E. 11-9, Page 7 and D.E. 11-12, Page 46).  She has past relevant work as a cook/runner/liner and housekeeper.  (D.E. 11-3, Page 48 and D.E. 11-9, Pages 8, 13 and 23).  Plaintiff stated she stopped working on May 1, 2017. (D.E. 11-9, Page 7).

A May 27, 2016 thyroid ultrasound and a June 10, 2016 abdominal ultrasound were both normal.  (D.E. 11-11, Pages 116 and 122).  On August 15, 2016, Plaintiff reported constant, moderate back pain with numbness, tingling and aching sensations beginning in her neck and radiating to her lower back.  (D.E. 11-11, Page 95). Plaintiff was assessed as having moderate bilateral peripheral neuropathy.  (D.E. 11-11, Pages 95-99). X-rays of Plaintiff's cervical spine showed sharp osteophytic lipping and joint space narrowing at C5-C6 and x-rays of Plaintiff's lumbar spine showed spondylosis and subluxation at L4-L5.  (D.E. 11, Page 100).  A carotid duplex ultrasound and related tests were normal, showing normal vessel flow.  (D.E. 11-11, Pages 101-104).  An echocardiogram was also normal.  (D.E. 11, Pages 105-106).

An abdominal x-ray and ultrasound on October 18, 2016 were both normal.  (D.E. 11-11, Pages 89-90).  A pelvic ultrasound on the same date was also normal except for ovarian cysts.  (D.E. 11-11, Page 91).

On January 21, 2017, an examination of Plaintiff's abdomen found it within normal limits.  (D.E. 11-11, Page 23).  On February 2, 2017, a CT of Plaintiff's abdomen was performed given Plaintiff's history of pancreatitis and abdominal pain.  (D.E. 11-11, Pages 21-22).  The results were a normal pancreas and diffuse hepatic steatosis.  (D.E. 11-11, Page 22).

A May 23, 2017 x-ray of Plaintiff's right knee should moderate joint space narrowing with severe joint space narrowing and no significant degenerative changes.  (D.E. 11-11, Page 123).  X-rays of Plaintiff's lumbar spine showed mild to moderate spondylosis at L3-L4 with moderate spondylosis at L5-S1 with no degenerative changes.  (D.E. 11-11, Page 123).  X-rays of Plaintiff's thoracic spine show mild, diffuse anterior osteophytic lipping with normal joint spaces.  (D.E. 11-11, Page 123).

Plaintiff was treated by Dr. Martinez on July 21, 2017.  (D.E. 11-12, Page 19).  She complained of cold symptoms for five days and requested a refill of her medications.  (D.E. 11-12, Page 19).  Plaintiff reported her anxiety was well controlled by her current medication and is noted as alert and oriented.  (D.E. 11-12, Page 19).  Plaintiff is also noted as having normal strength in her bilateral upper and lower extremities.  (D.E. 11-12, Page 19).  In addition to her previous medications for treatment of type 2 diabetes, Gastroesophageal reflux disease (GERD), hyperglyceridemia (elevated triglycerides),

hypertension, anxiety and depression, idiopathic neuropathy and low back pain, Plaintiff was also treated for bronchitis.  (D.E. 11-12, Page 20).

On March 19, 2018, Dr. Martinez treated Plaintiff.  (D.E. 11-11, Page 71). Plaintiff is noted as alert, oriented, uncomfortable and fatigued.  (D.E. 11-11, Page 71). Plaintiff is noted as having normal strength in her upper and lower extremities.  (D.E. 11-11, Page 71).  Plaintiff is noted as having hyperglyceridemia, Type 2 diabetes, major depressive order, hypertension, unspecified hereditary and idiopathic (unknown cause) neuropathy and bronchitis.  (D.E. 11-11, Page 71).  Plaintiff's diabetes is noted as being without complications and her medications were continued for her ailments.  (D.E. 11-11, Page 72).

Plaintiff, complaining of itching in her right ear and throat, was treated by Dr. Benjamin Shlomo on April 24, 2018 to establish care.  (D.E. 11-12, Pages 7 and 9). Plaintiff reported blurred vision, no fatigue, no weakness, no dizziness and no exercise intolerance.  (D.E. 11-12, Page 9).  Further, Plaintiff also reported no headaches, no chest pain, no nausea, normal appetite, no muscle aches, no joint pain, no swelling in the extremities and no mood changes.  (D.E. 11-12, Page 9).  Plaintiff is noted as well developed, well-nourished and in no acute distress as well as alert and oriented.  (D.E. 11-12, Page 10).  Plaintiff was treated for diabetes and hypertension and her medications, including gabapentin, were refilled.  (D.E. 11-12, Page 10).  In a patient health questionnaire, Plaintiff reported feeling depressed, tired, having a poor appetite, having trouble concentrating and having thoughts of hurting herself which made it extremely

difficult to work, take care of things at home and to get along with other people.  (D.E. 11-12, Pages 12-13).

A May 9, 2018 radiology report indicated Plaintiff had no acute pulmonary disease.  (D.E. 11-11, Page 124).  On August 1, 2018, Plaintiff was again treated by Dr. Martinez.  (D.E. 11-11, Page 74).  Plaintiff is noted as alert, oriented, uncomfortable and fatigued.  (D.E. 11-11, Page 74).  Plaintiff reported having musculoskeletal pain in her lower extremities.  (D.E. 11-11, Page 74).  Plaintiff was assessed as having bronchitis, Type 2 diabetes, hyperglyceridemia, hypertension and neuropathy and a vitamin D deficiency among other ailments.  (D.E. 11-11, Pages 74-75).  Plaintiff's diabetes is noted as being without complications and her medications were continued for her ailments, including Gabapentin for neuropathy pain.  (D.E. 11-11, Page 75).  An echocardiogram on August 1, 2018 was normal.  (D.E. 11-11, Page 106).  A carotid duplex ultrasound and related tests were also all normal.  (D.E. 11-11, Pages 107-111).

Plaintiff was again treated by Dr. Martinez on August 15, 2018.  (D.E. 11-11, Page 79).  Plaintiff complained on severe pain in her right upper abdomen for the past two weeks with mild relief when laying down and worse pain when bending and associated bloating, nausea and constipation.  (D.E. 11-11, Page 79).  Plaintiff is noted as alert, oriented, uncomfortable and fatigued.  (D.E. 11-11, Page 79).  Plaintiff was assessed as having type 2 diabetes, hypertension, idiopathic neuropathy, an anxiety disorder, a vitamin D deficiency, hyperglyceridemia, and generalized abdominal and pelvic pain.  (D.E. 11-11, Page 80).  X-rays and an ultrasound of Plaintiff's abdomen were both normal except that Plaintiff's left kidney had a cyst.  (D.E. 11-11, Page 93).  A pelvic

ultrasound was normal except for a small cyst.  (D.E. 11-11, Page 94).  Plaintiff was referred for a colonoscopy.  (D.E. 11-11, Page 82).

On August 21, 2018, Dr. Martinez completed a two-page, check the box Medical Source Statement (Physical) provided by an attorney's office.  (D.E. 11-12, Pages 17-18). Dr. Martinez listed Plaintiff's impairments as:  hyperglycemia (high blood glucose), fatigue, dizziness and leg pain.  (D.E. 11-12, Page 17).  He opined Plaintiff would miss three days per month due to her physical ailments, could frequently sit, occasionally stand and walk, and infrequently stoop and climb.  (D.E. 11-12, Page 17).  He further opined Plaintiff could frequently lift one to five pounds and could never lift anything heavier.  (D.E. 11-12, Page 17).  He also determined Plaintiff could frequently use her hands and raise both arms over her shoulders.  (D.E. 11-12, Page 17).  He opined Plaintiff's conditions caused severe pain such that she would be off task at work 20% of the time during any eight-hour workday, would need to lie down 15 minutes every two hours and would need to take unscheduled breaks.  (D.E. 11-12, Page 18).  He opined Plaintiff's prescribed clonazepam (a benzodiazepine) would interfere with Plaintiff's ability to maintain focus and concentration.  (D.E. 11-12, Page 18).  Lastly, he also determined Plaintiff did not require an assistive device to ambulate.  (D.E. 11-12, Page 18).

On September 7, 2018, Dr. Martinez treated Plaintiff.  (D.E. 11-11, Page 82). Plaintiff is noted has having a long history of uncontrolled diabetes and was complaining of chest pain for the past three days.  (D.E. 11-11, Page 82).  She was noted as alert, oriented, uncomfortable and fatigued.  (D.E. 11-11, Page 82).  Dr. Martinez noted

Plaintiff's last echocardiogram on August 1, 2018 was within normal limits. (D.E. 11-11, Page 82). Plaintiff was assessed has having type 2 diabetes, hyperglyceridemia, hypertension, idiopathic neuropathy, an anxiety disorder, a vitamin D deficiency and chest pain and her medications were continued. (D.E. 11-11, Pages 82-83).

Dr. Martinez treated Plaintiff on September 14, 2018. (D.E. 11-11, Page 86). Plaintiff's AIC was noted as elevated but that since starting medication, she is "feeling much better." (D.E. 11-11, Page 86). Plaintiff's blood pressure was noted as normal and reported she did not have any chest pain. (D.E. 11-11, Page 86). Plaintiff's GERD (gastro-esophageal reflux disease) is noted as well-controlled. (D.E. 11-11, Page 86). Plaintiff was also noted as alert and oriented and having normal strength in her bilateral upper and lower extremities. (D.E. 11-11, Page 86). Plaintiff was assessed as having type 2 diabetes, hyperglyceridemia, hypertension, idiopathic neuropathy, an unspecific anxiety disorder and vitamin D deficiency, GERD and constipation and her medications were continued. (D.E. 11-11, Page 87).

On January 2, 2019, Dr. Cynthia Linardos, a state agency medical consultant, considered Plaintiff's complaints of pain and fatigue and opined her alleged functional limitations and restrictions were not wholly supported by the evidence. (D.E. 11-4, Page 9). Dr. Linardos determined Plaintiff could occasionally lift and/or carry 50 pounds; frequently lift 25 pounds; stand, walk or sit for six hours in an 8 hour workday and could frequently climb ramps and stairs and ladders as well as stoop, kneel and crawl. (D.E. 11-4, Pages 9-11). She also opined Plaintiff had no communicative, visual, manipulative or environmental limitations. (D.E. 11-4, Page 10).

On January 9, 2019, Dr. Matthew Snapp, Ph.D., a state agency psychological consultant, opined Plaintiff did not have any severe limits due to any psychological disorder as her allegations and symptoms "appear to be nonsevere."  (D.E. 11-4, Page 7). He determined Plaintiff had no more than minimal limits in her ability to function independently, effectively and appropriately on a sustained basis.  (D.E. 11-4, Page 7). He further opined that as a result of Plaintiff's mental ailments, including depression and anxiety, she had a mild limitation in the four functional areas known as Paragraph B criteria:  (1) understanding, remember or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  (D.E. 11-4, Page 7).

On January 11, 2019, Plaintiff's application for benefits was denied as she was found to have the RFC to perform medium level work.  (D.E. 11-4, Pages 12-14 and D.E. 11-5, Pages 4-7).

Plaintiff reported to the emergency room on February 27, 2019 with complaints of left-sided numbness, tingling sensation and weakness.  (D.E. 11-12, Page 35).  Plaintiff stated she had woken up at 4:00 a.m. to make food for her husband and around 6:00 a.m. she began to feel some discomfort.  (D.E. 11-12, Page 35 and 101).  Plaintiff stated she had a left-sided headache with pain 10/10 which had last for 15 minutes and was sharp in nature and then she started feeling numbness, tingling and weakness to her left side. (D.E. 11-12, Page 35).  Plaintiff was noted as alert and oriented with upper and lower extremity weakness.  (D.E. 11-12, Page 37).  A head CT and 3D scan resulted in "[n]o acute finding."  (D.E. 11-12, Pages 30-31).  It was reported that "[t]race white matter

disease may reflect chronic microvascular ischemic changes." (D.E. 11-12, Page 30). The treating physician at the emergency room noted Plaintiff's MRI of her brain "was suggestive of ischemic changes but no new stroke." (D.E. 11-12, Page 35). A CT of Plaintiff's brain was also determined to have "no acute finding." (D.E. 11-12, Page 33). Radiology reports related to Plaintiff's chest showed "[n]o acute cardiopulmonary process" and an echocardiogram was "unremarkable." (D.E. 11-12, Pages 34 and 35). Plaintiff received a dual antiplatelet and a high intensity statin. (D.E. 11-12, Page 35). She was discharged the same day, noted as having "no residual weakness" and was told to follow up with a neurologist and her primary care physician for her uncontrolled diabetes. (D.E. 11-12, Page 35).

A February 28, 2019 cervical spine MRI showed normal alignment, a mild disc bulge at C5-6 causing mild compression, no significant nerve root compression and no spinal stenosis. (D.E. 11-12, Page 28). It was noted Plaintiff's cervical vertebrae were of good height, signal and alignment, the spinal cord was normal and there were no significant abnormalities identified other than a mild disc bulge and spondylosis at C5-6 without lateralization. (D.E. 11-12, Page 28).

Plaintiff requested reconsideration of her denial on March 5, 2019. (D.E. 11-5, Pages 9-10). In a March 6, 2019 disability field report, Plaintiff reported that since 2019, she feels more depressed, has little strength in her arms, gets tired easily, has memory problems related to a head injury and cannot make rapid movements. (D.E. 11-9, Pages 42 and 45). In undated reports, Plaintiff further reported she lives with her husband, son and grandchildren. (D.E. 11-9, Pages 31 and 49). She also reported she takes her

grandchildren to school and cooks for them, takes care of pets, and her ailments cause no issues with her personal care. (D.E. 11-9, Pages 32 and 50). Plaintiff stated her grandchildren would sometimes remind her to take her medicine in the morning, she prepares her own meals at least twice a week and she cleans with the help of her grandchildren and husband. (D.E. 11-9, Pages 33-34 and 51). Plaintiff further reported she drives although she sometimes she forgets where she parks or where she is going, shops in stores for food and clothing for three hours, pays bills and handles money, watches television, gets tired when walking but can walk one mile before needing to stop and rest and does not socialize with others instead staying home. (D.E. 11-9, Pages 34-36 and 52-53). Plaintiff also reported she needed to use a walker, which was prescribed by a doctor, since having a stroke. (D.E. 11-9, Page 55).

Plaintiff was treated by Dr. Martinez on March 18, 2019. (D.E. 11-12, Page 25). Plaintiff reported "she functions at maximum capability on medication" for both her anxiety and depression and her "psychosocial and physical functionality improves with medication." (D.E. 11-12, Page 25). Dr. Martinez noted he discussed good coping mechanisms with her and Plaintiff denied suicidal or homicidal ideation. (D.E. 11-12, Page 25). Plaintiff also reported her neuropathy was stable and she was compliant with medication. (D.E. 11-12, Page 25). Dr. Martinez noted Plaintiff was admitted to the hospital on February 27, 2019 for left side weakness and tingling and while an MRI of her brain showed ischemic changes, there was "no new stroke." (D.E. 11-12, Page 25). Plaintiff is noted as alert and oriented with normal strength in her bilateral upper and

lower extremities.  (D.E. 11-12, Pages 25-26).  Plaintiff's medications were refilled and a follow up appointment was scheduled.  (D.E. 11-12, Pages 26-27).

Plaintiff was treated at the Corpus Christi Heart Clinic on March 21, 2019 by Dr. Christel Cuevas.  (D.E. 11-12, Page 56).  Plaintiff reported two years of chest pain in the center of her chest that radiated to her back and limited physical activity due to hip pain.  (D.E. 11-12, Page 56).  Plaintiff is noted as having a steady gait and being alert and oriented to person, place and time with the appropriate mood and affect.  (D.E. 11-12, Page 57).  The overall impression was "concentric left ventricular hypertrophy with left ventricular diastolic dysfunction" and Plaintiff was assessed as having hypertension and scheduled for a stress test and a one month follow up.  (D.E. 11-12, Pages 57-59).  The stress test results determined Plaintiff was "within normal limits."  (D.E. 11-12, Page 60).

On April 2, 2019, Dr. Klaas performed a mental status examination.  (D.E. 11-12, Page 44).  Plaintiff is noted as having a sluggish gait and using a walker.  (D.E. 11-12, Page 44).  Plaintiff reported she lives with her 33-year-old son, takes care of her own personal hygiene, performs household chores, prepares meals, watches television, plays with her three small dogs and reads the bible.  (D.E. 11-12, Page 45).  Plaintiff states she had difficulty sleeping due to "generalized diabetic nerve pain and worry" and that her son helps her shop for groceries and manage her finances.  (D.E. 11-12, Page 45).  Plaintiff also reported she attends Mass every other Sunday, spends the majority of her time at home, has a friend who visits every two or three days and calls each day and that she goes out to eat with her son every two weeks.  (D.E. 11-12, Page 45).  Dr. Klaas noted Plaintiff's concentration was impaired as she was unable to mentally add simple

fractions or manage long division.  (D.E. 11-12, Page 45).  Plaintiff reported memory difficulty.  (D.E. 11-12, Page 45).  Dr. Klaas noted Plaintiff "was cooperative and her demeanor was agreeable" and she "maintained eye contact with [him] about 30% of the time and [he] was able to establish rapport with her."  (D.E. 11-12, Page 46).  He also noted her "statements were clearly articulated and adequately expanded but not logically sequenced."  (D.E. 11-12, Page 46).  Additionally, Dr. Klaas reported Plaintiff's verbal reasoning was poor and her comments were sensible but rambling.  (D.E. 11-12, Page 46).  Plaintiff is noted as oriented to time, place and person, having a depressed affect and being anxious with a stable mood.  (D.E. 11-12, Page 46).  He noted Plaintiff was able to provide an accurate history, to recall three out of three items presented after five minutes and she was unable to mentally add simple fractions and manage mental long division.  (D.E. 11-12, Page 46).  Dr. Klaas opined Plaintiff had "a very limited fund of knowledge and she functions intellectually within the lower borderline range."  (D.E. 11-12, Page 46).  He also opined she had fair insight and judgment.  (D.E. 11-12, Page 47).  He determined Plaintiff had an unspecified depressive disorder and a somatic symptom disorder with predominant, moderately severe persistent pain caused by cervical and diabetic neuropathic ailments.  (D.E. 11-12, Page 47).  Dr. Klaas concluded Plaintiff had the following functional capacity:

> This patient is able to understand simple instructions but she has difficulty remembering and applying such information for one-two step activities and especially with more complex tasks.  The patient has a limited capacity to get along with supervisors, co-workers and members of the general public. The patient's concentration is impaired and she has difficulty attending to details, staying on task and working at a steady pace.  This patient also has difficulty in being able to effectively control, regulate and modulate her

emotions and behaviors so as to achieve and maintain well-being in a work setting.

(D.E. 11-12, Page 47).

The prognosis is listed as "guarded" as Plaintiff was "tenuously stable at present with her current medication regimen and support from her son Fernando." (D.E. 11-12, Page 47).

On April 30, 2019, Dr. Martinez treated Plaintiff who complained of headaches and a pinching feeling in her chest. (D.E. 11-13, Page 12). He noted Plaintiff had a "possible" mini-stroke (transient ischaemic attack or TIA) the previous month, noting an unremarkable CT. (D.E. 11-13, Page 12). Plaintiff is noted as alert, oriented, uncomfortable and fatigued with normal strength in her bilateral upper and lower extremities. (D.E. 11-13, Page 12). Plaintiff's medications were continued and she was scheduled for a follow-up appointment after additional lab work. (D.E. 11-13, Pages 13-15). Her lab results showed a low vitamin D level and elevated cholesterol levels. (D.E. 11-13, Pages 37-38 and 76)

Dr. Mehdi Sharifan, a state agency consultative physician, opined on May 2, 2019 that Plaintiff had no more than minimal limits on her ability function independently, effectively and appropriately on a sustained basis and did not have any severe limits due to any psychological disorders as her allegations and symptoms appeared to be nonsevere. (D.E. 11-4, Page 23).

Dr. Martinez again treated Plaintiff on May 7, 2019 for "follow up on lab results and diabetes." (D.E. 11-13, Page 16). He noted Plaintiff "states that she has not been watching her diet and has not incorporated physical activity into her lifestyle." (D.E. 11-

3, Page 16).  He noted Plaintiff had a high blood sugar but that "she had candy this morning before coming to the office."  (D.E. 11-13, Page 16).  He gave Plaintiff a diabetic handout on diet and exercise to aid in the management of diabetes, noting Plaintiff was "non-compliant with diet/exercise." (D.E. 11-13, Pages 16-17).  Plaintiff is noted as alert, oriented, comfortable and normal with normal strength in her bilateral upper and lower extremities.  (D.E. 11-13, Page 16).  Her medications were continued and she was scheduled for a follow-up in two weeks.  (D.E. 11-13, Pages 17-18).

On May 9, 2019, Dr. Shabnam Rehman, a state agency consultative physician, considered Plaintiff's complaints of pain and fatigue and opined her statements concerning the intensity, persistence and limiting effects of her symptoms were not fully consistent with the record.  (D.E. 11-4, Page 28).  Plaintiff was again found to be able to perform work at a medium level and therefore, on May 10, 2019, Plaintiff's request for reconsideration was denied.  (D.E. 11-4, Pages 15-21 and 29-30 and D.E. 11-5, Pages 10-13).

Dr. Martinez again treated Plaintiff on May 21, 2019 for a "follow up for diabetes." (D.E. 11-13, Page 19).  Plaintiff reported she had changed her diet and was taking the prescribed diabetes medications.  (D.E. 11-13, Page 19).  Dr. Martinez instructed Plaintiff "on low carb low sugar diet and to incorporate physical activity into [her] lifestyle."  (D.E. 11-13, Page 19).  Plaintiff is noted as alert and oriented, comfortable and normal with normal strength in her bilateral upper and lower extremities. (D.E. 11-13, Page 19).  Her medications were continued and she was scheduled for a two month follow-up appointment.  (D.E. 11-13, Pages 20-21).

On June 5, 2019, Plaintiff requested a hearing before an ALJ.  (D.E. 11-5, Pages 14-15).  Plaintiff also reported she had a stroke in February 2019.  (D.E. 11-9, Page 60).

Plaintiff was treated at the emergency room on June 17 and 18, 2019 after reporting left sided weakness, intermittent nausea, urinary frequency and right sided lower back pain.  (D.E. 11-12, Page 98).  Plaintiff is noted as alert and oriented, with a weak left hand grasp and left leg weakness with a normal range of motion and an abnormal gait.  (D.E. 11-12, Page 100).  Radiology reports related to Plaintiff's chest indicated Plaintiff's heart, lungs and thoracic spine were all within normal limits.  (D.E. 11-12, Page 88).  The overall impression was "[n]o acute cardiopulmonary disease" and "[n]o significant change compared to previous exam.  (D.E. 11-12, Page 88).  A CT of Plaintiff's brain the same day was normal, with "no significant change from the previous exam."  (D.E. 11-12, Page 90).  A CT angiography of Plaintiff's neck showed no significant stenosis, dissection or occlusion in her carotid or vertebral arteries and a radiology report of Plaintiff's bilateral extracranial arteries was normal except for a chronic occlusion of the left vertebral artery.  (D.E. 11-12, Pages 92-93 and 95).  Degenerative changes in her spine are noted with no acute fracture and normal alignment.  (D.E. 11-12, Page 93).  Plaintiff is noted as having "hypoplastic left vertebral artery with chronic occlusion of the VI and proximal V2 segments with some distal reconstitution" similar to February 2019 as well as normal soft tissues and dental disease.  (D.E. 11-12, Page 93).  The overall impression was "[n]o major intracranial arterial hemodynamically significant stenosis or aneurysm."  (D.E. 11-12, Page 96).  The treating physician in the emergency room noted Plaintiff's tests did not confirm she had a stroke (cerebrovascular

accident or CVA) and her "weakness resolved back to the baseline state" prior to discharge.  (D.E. 11-12, Page 98).  Plaintiff was discharged and told to follow-up with her primary physician and to avoid lifting, heavy pulling, pushing and to avoid extreme temperature.  (D.E. 11-12, Page 100).

On June 20, 2019, Plaintiff was treated by Dr. Martinez for a follow-up from her emergency room treatment.  (D.E. 11-13, Page 22).  Dr. Martinez reviewed the testing discussed above, noting the overall normal impressions.  (D.E. 11-13, Page 22).  Plaintiff is noted as alert, oriented, comfortable and normal with normal strength in her bilateral upper and lower extremities.  (D.E. 11-13, Pages 22-23).  Plaintiff was again counseled on her diet for control of her diabetes as her blood sugar was high.  (D.E. 11-13, Page 22).   Her medications were continued and she was scheduled for a follow-up appointment.  (D.E. 11-13, Page 24).

Dr. Martinez treated Plaintiff the following month on July 5, 2019.  (D.E. 11-13, Page 26).  Plaintiff was again counseled about her diet for control of her diabetes as her blood sugar was again high.  (D.E. 11-13, Page 26).  Plaintiff is noted as alert, oriented, comfortable and normal with normal strength in her bilateral upper and lower extremities. (D.E. 11-13, Page 26).  Plaintiff's medications were continued and she was scheduled for a follow-up appointment.  (D.E. 11-13, Pages 27-28).

On August 30, 2019, Plaintiff was treated by Dr. Martinez, complaining of cold symptoms.  (D.E. 11-13, Page 29).  Plaintiff also complained of chronic anxiety, stating she "functions at maximum capability on medication."  (D.E. 11-13, Page 29).  Plaintiff is noted as alert, oriented, comfortable and normal.  (D.E. 11-13, Page 29).  Plaintiff was

counseled on the addictive potential of medication and it was noted her "psychosocial and physical functionality improved with medication." (D.E. 11-13, Page 29). After refusing a routine urine drug screening (UDS), Plaintiff complied and after reviewing the in house results, Plaintiff "was noted to be positive for cocaine and THC." (D.E. 11-13, Pages 29 and 75). Upon reviewing the results with Plaintiff, Dr. Martinez noted Plaintiff stated she did not use drugs and that after Plaintiff refused a serum drug screening, she "began to cry and stormed out of the clinic angry," stating "she would bring those results and her lawyer to [his] office." (D.E. 11-13, Page 29). Plaintiff left the office without picking up her prescriptions. (D.E. 11-13, Page 29).

Dr. Martinez again treated Plaintiff on October 25, 2019 who complained of a sore throat, sinus pressure and congestion with headaches for the previous five days. (D.E. 11-13, Page 33). Plaintiff also requested routine lab work to test her cholesterol, thyroid function, diabetes, kidney/liver function and vitamin D level. (D.E. 11-13, Page 33). Plaintiff is noted as alert, oriented, comfortable and normal. (D.E. 11-13, Page 33). Plaintiff's medications were continued and she was treated for acute sinusitis. (D.E. 11-13, Pages 35-36). Her platelet count and cholesterol levels were high and her vitamin D level was low. (D.E. 11-13, Pages 35 and 73-74).

At the December 19, 2019 hearing, Plaintiff testified she typically drives one day a week during the day. (D.E. 11-3, Page 47). She further testified the number one issue keeping her from working full-time was her left-sided weakness which started after her fall at work in 2016. (D.E. 11-3, Page 49-50). Plaintiff also stated she was treated in an emergency room in February 2019 for a stroke, which required her to start using a

walker.  (D.E. 11-3, Pages 50-51).  Plaintiff stated she does not use the walker in her home, instead using walls, sofas or a cabinet to balance.  (D.E. 11-3, Page 51).  She also testified she has diabetes, currently stable and controlled with medication.  (D.E. 11-3, Pages 52-53).  She further testified she has intermittent neck pain caused by physical activity, constant left side hip, leg and back pain and right knee pain.  (D.E. 11-3, Pages 53-56).  Plaintiff stated her depression symptoms started after she fell at work in 2016, she has difficulty with her short-term memory and she does not associate with other people.  (D.E. 11-3, Pages 57-59).  The VE classified Plaintiff's past relevant work as a housekeeper as actually performed was at a medium level because of Plaintiff's testimony that she moved mattresses, although the position was generally classified as light work.  (D.E. 11-3, Pages 66-68 and 70).

## V.    THE ALJ'S DECISION

In the February 4, 2020 decision, the ALJ determined Plaintiff had not been under a disability from May 1, 2017 through the date of the decision.  (D.E. 11-3, Page 27).  The ALJ determined Plaintiff had the following severe impairments:  degenerative disc disease, degenerative joint disease, diabetes and hypertension.  (D.E. 11-3, Page 19).  The ALJ also considered Plaintiff's obesity and gastroesophageal reflux disease ("GERD"), determining "neither cause more than a minimal effect on her ability to perform basic work activities."  (D.E. 11-3, Pages 19-20).  The ALJ further determined there was no medical evidence in the record to establish Plaintiff had a stroke as she alleges.  (D.E. 11-3, Page 20).  The ALJ also considered Plaintiff's depression, anxiety, and somatic symptom disorder, singly and in combination, determining they "do not cause more than

minimal limitation in the [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." (D.E. 11-3, Page 20). In making this decision, considering the Paragraph B criteria, the ALJ found Plaintiff had a mild limitation in all four areas. (D.E. 11-3, Pages 21-22). Specifically, the ALJ found Plaintiff had a mild limitation understanding, remembering or applying information, citing to her complaints of short-term memory difficulty to Dr. Klaas related to difficulty remembering conversations, names, appointments and taking medications. (D.E. 11-3, Page 21). The ALJ also noted that during her consultative examination with Dr. Klaas, Plaintiff exhibited poor verbal reasoning and a limited fund of knowledge, performing in the lower borderline range of intellectual functioning. (D.E. 11-3, Page 21). The ALJ further noted Plaintiff was also observed as a good historian and was able to recall three out of three items after a short delay during the examination, her primary care providers made no observations of memory issues and recorded normal appearance, and Plaintiff reported functioning at maximum capacity on medication, being able to pay bills, performing personal care independently and being able to care for her family and pets. (D.E. 11-3, Page 21). As to the next functional area, interacting with others, the ALJ noted inconsistencies in the record, comparing Plaintiff's hearing testimony that she has difficulty with people she does not know and stays in the house with limited social activities with her reports that she has frequent and regular interaction with a close friend, she and her husband go out to eat every two weeks, she shops in stores for as long as three hours at a time and her records show no significant behavioral difficulties and normal speech. (D.E. 11-3, Page 21). The ALJ also noted she had no reported problems getting along with others or

authority figures other than one instance with Dr. Martinez after her drug screen was positive for cocaine and THC.  (D.E. 11-3, Page 21).  In the third functional area, concentrating, persisting and maintaining pace, the ALJ considered Plaintiff's testimony that she had trouble focusing, Dr. Klaas' report that she exhibited poor concentration and Dr. Martinez's opinion that her anxiety medication caused side effects interfering with her ability to concentrate.  (D.E. 11-3, Page 21).  However, the ALJ also noted the record otherwise reflected no difficulties in this area, with Plaintiff regularly appearing alert and oriented and reporting maximum capability with medication.  (D.E. 11-3, Page 21).  In the final functional area, adapting and managing one's self, the ALJ noted that while Plaintiff reported difficulty managing stress, she handled her own personal care and cared for her family and pets.  (D.E. 11-3, Page 21).  The ALJ further cited to Dr. Klaas' report, specifically that he noted Plaintiff had a stable mood with a depressed and anxious affect and fair insight with a somewhat unusual appearance.  (D.E. 11-3, Page 21).  The ALJ also noted that while Dr. Klaas opined Plaintiff would have difficulty controlling her emotions, there were no mood swings or irritability noted during the examination and she is noted as cooperative.  (D.E. 11-3, Pages 21-22).  The ALJ further noted the record from her primary providers generally shows appropriate mood and affect and improved functionality with medication.  (D.E. 11-3, Page 23).  As a result, finding Plaintiff's mental impairments caused no more than mild limitations, the ALJ determined they were nonsevere.  (D.E. 11-3, Page 22).  In making this determination, the ALJ discussed Dr. Klaas' opinion that Plaintiff was capable of understanding simple instructions but would have difficulty with concentration, controlling emotions and remembering and applying

information for one to two step and more complex tasks and could have only limited interaction with others. (D.E. 11-3, Page 22). However, the ALJ stated he was "unpersuaded" by this opinion because "[a]lthough well supported by his observations of the claimant, the undersigned notes that this was a one-time assessment based on a single examination [and there is] no longitudinal support in the record for more than minimal functional limitations, particularly Dr. Martinez's records which indicated that the claimant has maximum mental functioning when on medication for anxiety and depression." (D.E. 11-3, Page 22). The ALJ further cited to the opinions of two state agency psychological consultants who assessed Plaintiff has having only mild limitations in the four areas of mental functioning. (D.E. 11-3, Page 22).

The ALJ concluded Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (D.E. 11-3, Page 22). Considering the entire record, the ALJ then determined Plaintiff had the RFC to perform a full range of medium work, which included her past relevant work as a housekeeper. (D.E. 11-3, Pages 24-27). Making these determinations, in relevant part, the ALJ considered Plaintiff's knee and back ailments and reported left side fatigue, noting that despite Plaintiff's reported periodic walker use and her own testimony regarding her ability to ambulate, the record did not support a walker was medically necessary, citing to Dr. Martinez's opinion that Plaintiff does not require an assistive device for ambulation, the record generally showing Plaintiff having a normal, steady gait and station with some weakness on the left side noted in February 2019 and imaging of

her knees and back showing no significant degenerative changes.  (D.E. 11-3, Pages 23-26).

The ALJ also considered Dr. Martinez's medical source statement where he opined Plaintiff would likely miss three days of work per month due to her medical conditions and would be limited to frequent sitting, occasional standing and walking, infrequent stooping and climbing and would be able to lift no more than one to five pounds with frequent breaks needed due to pain and fatigue.  (D.E. 11-3, Page 26). However, the ALJ was "unpersuaded" by Dr. Martinez's opinion, citing to the lack of objective findings to support these statements, "with his treatment records offering little to no objective findings consistent with these limitations, [and] the record at the hearing level showing the claimant [having] consistently unremarkable physical examinations." (D.E. 11-3, Page 26).  The ALJ did agree with Dr. Martinez's statement that Plaintiff did not require an assistive device, finding it was consistent with the record that Plaintiff had a normal and steady gait.  (D.E. 11-3, Page 26).  The ALJ found persuasive two State Agency medical consultants who opined Plaintiff had the ability to perform medium work, stating their conclusions were supported by "consistently unremarkable physical examinations." (D.E. 11-3, Page 26).

## VI.    STANDARD OF REVIEW

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).  The burden has been described as more than a scintilla but lower than a preponderance.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (citation omitted). A finding of "no substantial evidence" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (citations omitted).

In applying the substantial evidence standard, the Court scrutinizes the record to determine whether such evidence is present.  However, the Court does not reweigh the evidence, try the issues de novo or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citations omitted); *Carey*, 230 F.3d at 135 ("Conflicts in the evidence are for the Commissioner to resolve.") (citation omitted).  It is incumbent upon the Court to look at the evidence as a whole and take into account the following factors: (1) objective medical evidence or clinical findings; (2) diagnosis of any examining physician; (3) subjective evidence of pain and disability and (4) the claimant's age, education and work history.  *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citation omitted).

In evaluating a disability claim, the Commissioner follows a five-step process to determine whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant

cannot presently perform relevant work. *Martinez v. Chater*, 64 F.3d 172, 173-174 (5th Cir. 1995) (citations omitted). The claimant bears the burden of proof on the first four steps with the burden shifting to the Commissioner at the fifth step who must show that, in light of claimant's RFC, claimant can perform other substantial work in the national economy. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

## VII. DISCUSSION

Plaintiff asserts the ALJ improperly evaluated the opinions of Dr. Martinez and Dr. Klaas. More specifically, Plaintiff asserts the ALJ should have afforded more weight to these opinions when determining Plaintiff's RFC. Relying mainly on Dr. Klaas' opinion, Plaintiff also asserts the ALJ did not accurately account for her mental limitations when determining her RFC. However, a review of the ALJ's opinion shows he properly considered all evidence in the record, including both Dr. Martinez's and Dr. Klaas' opinions and substantial evidence supports his RFC determination.

An individual claiming disability has the burden of proving disability and must prove the inability to engage in any substantial gainful activity. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (citation omitted). "The mere presence of some impairment is not disabling per se. Plaintiff must show that she was so functionally impaired by her [disability] that she was precluded from engaging in any substantial gainful activity. *Id.* (citations omitted). Further, it is the task of the ALJ, not this Court, to weigh the evidence. *Hames*, 707 F.2d at 166; *Holmes v. Colvin*, 555 F. App'x 420, 421 (5th Cir. 2014) (citing *Bowling*, 36 F.3d at 434). "It is not the place of this Court to reweigh the evidence, or try the issue de novo, or substitute its judgment…[i]f supported

by substantial evidence, the Secretary's findings are conclusive and must be affirmed." *Id.*

An RFC is an assessment, based on all relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite impairments. 20 C.F.R. § 404.1545(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) ("RFC involves both exertional and non-exertional factors.") RFC refers to the most a claimant is able to do despite physical and mental limitations. 20 C.F.R. § 404.1545(a). The ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. The ALJ is not required to incorporate limitations in the RFC that are not supported in the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") (citation omitted). Here, the ALJ thoroughly summarized and analyzed Plaintiff's conditions, including her subjective complaints and the objective medical evidence, finding Plaintiff had multiple severe impairments but no impairment or combination of impairments that met or medically equaled the severity of a listed impairment and she was capable of performing her past relevant work as a housekeeper.

While both Dr. Martinez and Dr. Klaas opined Plaintiff was more limited in certain areas than found by the ALJ, the ALJ is not bound by their assessments so long as he sufficiently explained the weight he assigned to their opinions. *Beck v. Barnhart*, 205 F. App'x 207, 213-14 (5th Cir. 2006); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir.

2007).  An ALJ may reject any opinion, in whole or in part, "when the evidence supports a contrary conclusion." *Martinez*, 64 F.3d at 176.  Further, there is a new Social Security Administration rule regarding RFC determinations for all claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. Because Plaintiff filed her application for disability insurance benefits on June 26, 2018, the new rule applies which provides the Commissioner is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Id.* at § 404.1520c(a).  Instead, the Commissioner is to consider all medical opinions and prior administrative medical findings using the factors outlined in the rule, the most important of which are supportability and consistency. *Id.* at § 404.1520c(b)(2).

In determining the persuasiveness of each medical opinion or prior administrative finding, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant (including: (i) length of treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of treatment relationship, (v) examining relationship), (4) specialization, and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *Id*. § 404.1520c(c).  An ALJ must explain how she considered the supportability and consistency factors for a medical opinion or a prior administrative medical finding in her determination. *Id*. §§ 404.1520c(b)(2).  An ALJ may, but is not required, to discuss how she considered the medical source's relationship with the claimant, specialization, or other factors in her determination.  *Id*.  When an ALJ determines there are multiple medical opinions or prior administrative medical findings

concerning the same issue that are equally persuasive in terms of supportability and consistency with the record, she must further discuss how she considered the opinions or prior administrative findings. *Id.* § 404.1520c(b)(2). In this circumstance, the ALJ also must discuss how she considered the relationship with the claimant, specialization, or other factors in her determination. *Id.*

Contrary to Plaintiff's assertion, the ALJ did not simply state he was unpersuaded by both Dr. Martinez's and Dr. Klaas' opinions. The ALJ discussed the competing evidence at length in his decision as discussed above, comparing the observations and findings of both Dr. Martinez and Dr. Klaas with the rest of the record, including their own treatment and/or examination notes. While Plaintiff points to Dr. Martinez's diagnosis of type 2 diabetes, hypertension, neuropathy, fatigue and pain in the legs, major depressive disorder and anxiety disorder, Plaintiff must show not only the mere presence of some impairment but also that she is also functionally impaired. *Hames*, 707 F.2d at 165.

Plaintiff cites to limited portions of the record showing some support of her subjective complaints and completely ignores the remainder of the record, which demonstrates she consistently had unremarkable examinations where Plaintiff was routinely noted as having a normal strength in both her upper and lower extremities, normal mood and affect, being alert and oriented and having both mental and physical ailments controlled by medication. (D.E. 11-9, Pages 32, 34-36 and 50-53; D.E. 11-11, Pages 71, 74, 79, 82, 86; D.E. 11-12, Pages 10, 19, 25-26, 35, 37, 45, 57 and 100; and D.E. 11-13, Pages 12, 16, 19, 22-23, 26, 29 and 33); *James v. Bowen*, 793 F.2d 702 (5th

Cir. 1986) (citation omitted) (Impairments controlled by medication are not disabling). While Plaintiff alleges she had a stroke in February 2019 and was prescribed a walker, there is no record of either.  Instead, her results from objective testing in February 2019 were unclear as it was reported that "[t]race white matter disease *may* reflect chronic microvascular ischemic changes."  (D.E. 11-12, Page 30) (emphasis added).  The treating physician at the emergency room and Dr. Martinez both noted Plaintiff's MRI of her brain "was suggestive of ischemic changes but no new stroke" and she was discharged the same day, noted as having "no residual weakness." (D.E. 11-12, Pages 25 and 35). There is no mention in any record of an assistive device being required to ambulate and Dr. Martinez opined Plaintiff did not require one.  (D.E. 11-12, Page 18).

Additionally, while Plaintiff directs the Court to Dr. Martinez's August 2016 diagnosis of moderate bilateral lower extremity peripheral neuropathy and imaging of her cervical spine showing osteophytic lipping and imaging of her lumbar spine showing subluxation, Plaintiff does not reference Dr. Martinez's treatment notes in March and May 2019 where Plaintiff reported her neuropathy was stable on her medication and Dr. Martinez repeatedly encouraged Plaintiff to incorporate physical activity into her lifestyle.  (D.E. 11-12, Page 25 and D.E. 11-13, Page 16-17 and 19).  May 2017 x-rays of Plaintiff's lumber spine showed mild to moderate deficiencies with no degenerative changes and a February 2019 cervical spine MRI showing no more than mild deficiencies with no other significant abnormalities noted and a multitude of additional objective testing showed relatively normal results.  (D.E. 11-11, Pages 30-31, 33-35, 82, 106-111,

123 and 124; D.E. 11-12, Pages 25, 28, 60, 88, 90, 92-93, 95 and 96; and D.E. 11-13, Page 22).

Plaintiff further cites to the one treatment record from two doctors: Dr. Cuevas in March 2019 and Dr. Shlomo in April 2018. While Plaintiff lists the subjective complaints she reported to both physicians, such as chest pain, back and hip pain causing limited physical activity, blurred vision, feeling depressed, having trouble concentrating, poor appetite, nausea and thoughts of hurting herself, she ignores Dr. Cuevas' observations that she had a steady gait and was alert and oriented with the appropriate mood and affect and Dr. Shlomo's observation that Plaintiff was well developed, well nourished, in no acute distress and alert and oriented. (D.E. 11-12, Pages 7, and 9-13 and 60). Further, Plaintiff provided conflicting reports to Dr. Shlomo as she also reported no headaches, no chest pain, no nausea, normal appetite, no muscle aches, no joint pain, no swelling in the extremities and no mood changes. (D.E. 11-12, Page 9); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (It is well settled that an ALJ's credibility findings on a claimant's subjective complaints are entitled to deference.); *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) (Subjective complaints must be corroborated, at least in part, by objective medical findings.) (citations omitted)

Additionally, Plaintiff reported she takes her grandchildren to school and cooks for them, takes care of three dogs, and her ailments cause no issues with her personal care. (D.E. 11-9, Pages 32 and 50). She also drives, performs household chores, reads the bible, shops in stores for food and clothing for three hours at a time, prepares her own meals at least twice a week, pays bills and handles money, watches television, can walk

one mile before needing to stop and rest, attends Mass every other Sunday, has a friend who visits every two or three days and calls each day and she goes out to eat at least twice a month.  (D.E. 11-9, Pages 34-36 and 51-53 and D.E. 11-12, Page 45).

Further, as referenced by the ALJ, in January and May 2019, two state agency medical consultants considered Plaintiff's complaints of pain and fatigue, opining her alleged functional limitations and restrictions were not wholly supported by the evidence and she was capable of performing work at the medium level and had no communicative limitations.  (D.E. 11-4, Pages 9-10 and 28).  Additionally, also as referenced by the ALJ, two state agency psychological consultants opined Plaintiff had no more than minimal limits on her ability function independently, effectively and appropriately on a sustained basis and she did not have any severe limits due to any psychological disorders as her allegations and symptoms appeared to be non-severe.  (D.E. 11-14, Pages 4 and 23).

Reviewing the record, substantial evidence supports the ALJ's determination that Dr. Martinez's check the box medical source assessment limiting Plaintiff's activities was not supported by his own treatment notes or by the record as a whole.  *Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017) (quoting *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (The Fifth Circuit has characterized responses to a questionnaire format, such as the one here, as the "typical brief or conclusory testimony" that an ALJ may disregard under the good cause exception when lacking "explanatory notes" or "supporting objective tests and examinations.")  The same is true of the weight the ALJ gave to Dr. Klaas' opinion.  While Plaintiff takes issue with the ALJ being less persuaded by Dr. Klaas' opinion in part because it was a one-time examination, the ALJ properly

considered the record as a whole which did not support Dr. Klaas' finding that Plaintiff had a severe mental impairment. While Dr. Klaas noted Plaintiff had poor verbal reasoning, a limited fund of knowledge and performed in the lower borderline range of intellectual functioning, he also observed she was a good historian and was able to recall three out of three items after a short delay. (D.E. 11-12, Pages 44-47). The ALJ correctly noted that while Dr. Klaas opined Plaintiff's concentration was impaired, she had a limited ability to work with others and she had difficulty controlling her emotions, the record did not contain any observations of memory issues from her primary providers and, as discussed above, Plaintiff reported functioning at a maximum capacity on medication, could perform activities of daily living and was consistently noted as alert and oriented with an appropriate mood and affect. (D.E. 11-9, Pages 32, 34-36 and 50-53; D.E. 11-11, Pages 71, 74, 79, 82, 86; D.E. 11-12, Pages 10, 19, 25, 37, 45, 57 and 100; and D.E. 11-13, Pages 12, 16, 19, 22-23 and 29). The record reflects Plaintiff had appropriate interactions with all of her treating physicians except on one occasion with Dr. Martinez related to a positive drug screen and she was cooperative and had an agreeable demeanor with Dr. Klaas during his examination. (D.E. 11-12, Page 46 and D.E. 11-13, Page 29).

Again, it is the task of the ALJ to weigh the evidence. *Hames*, 707 F.2d at 165; *Chambliss*, 269 F.3d at 523. "It is not the place of this Court to reweigh the evidence, or try the issue de novo, or substitute its judgment...[i]f supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed." *Id*. Upon review, the ALJ's determination of Plaintiff's RFC is based on substantial evidence. The ALJ acted

within his discretion in interpreting the evidence before him, including the opinions of Dr. Martinez and Dr. Klaas as well as the competing evidence and discussing it at length in his decision.  Even though the record illustrates Plaintiff suffers from several severe impairments, substantial evidence supports the ALJ's conclusion that Plaintiff's impairments did not prevent her from performing medium work as identified in the RFC during the period at issue.  Ultimately, the ALJ sufficiently explained why certain opinions were unpersuasive and properly considered Plaintiff's mental ailments when determining her RFC.  While Plaintiff asserts the ALJ erred, the undersigned disagrees and finds Plaintiff is simply asking this Court to reweigh the evidence.

## VIII.  CONCLUSION

For the reasons discussed above, this Court finds the ALJ's decision is supported by substantial evidence and the ALJ applied the correct legal standards when making his findings.  Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED**, the Defendant's Motion for Summary Judgment is **GRANTED**, the Commissioner's determination is **AFFIRMED**, and this case is **DISMISSED with prejudice**.

ORDERED this 25th day of August, 2021.

Jason B. Libby
United States Magistrate Judge